RYE BEACH PLEASURE PARK CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13108.    Promulgated May 13, 1927.

*Perry W. Shrader, Esq.,* and *Jacob Axelrad, Esq.,* for the petitioner.

*J. Harry Byrne, Esq.,* for the respondent.

Deficiencies of $2,880.08 and $2,751.12, income and excess-profits taxes for the calendar years 1918 and 1919. Petitioner alleges that the Commissioner erred in disallowing depreciation; in excluding the alleged value of certain property as paid-in surplus, and in refusing to grant petitioner relief under the special assessment provisions of sections 327 and 328 of the Revenue Act of 1918.

### FINDINGS OF FACT.

The petitioner is a New York corporation with its principal office at Rye Beach, Rye, N. Y. It was incorporated in 1916 for the purpose of operating an amusement park at Rye Beach theretofore operated by the Montross & Hardy Amusement Co. The purposes of the company as stated in its charter are:

(a) To own, lease, mortgage, buy and sell real estate.

(b) To buy, sell, mortgage, rent buildings, houses, chattels and devices of all kinds and character used in connection with the maintenance and operation of hotels, restaurants, public parks, amusement parks and places of amusement generally.

(c) To maintain and operate one or more hotels, lunch counters, restaurants, amusement parks, amusement devices, games, theatres, dancing pavilions, merry-go-rounds, roller coasters, bowling alleys and generally all things, acts, performances, exhibitions and devices invented and made for the purpose of amusing the public in a moral and healthful manner.

(d) To own, lease, rent and sell bath houses, and bathing suits, lease rent and grant the privilege of bathing, boating, swimming, fishing and other public athletic sports and games.

(e) To sell liquors, ales, beers and wines and operate a restaurant and sell meats, foods and refreshments of all kinds and character.

(f) To apply for and obtain the necessary licenses, permits and legal and other authority to operate, sell, maintain and keep each and every of the above mentioned, and do all things in connection therewith in compliance with the statutes and laws of the State of New York, and the several municipalities and subdivisions thereof.

(g) All of the above named acts, things and deeds are to be done and performed with the view and for the purpose of making a charge therefor and deriving a compensation therefrom.

The Montross & Hardy Amusement Co. held the land on which the park was located, under lease from one Charles E. McManus. The following buildings, among others, were located on the land: Three picnic pavilions, old dance hall, pony track, living quarters for pony track, pony track stable, concessionaires' stands, restaurant, ice cream pavilion, skee ball building, barn, rest room, office, two garage buildings, theatre, quarters for help, drug store, waiting station, entrance towers, automobile entrance, two houses, walks, and benches.

The Montross & Hardy Amusement Co. had not been successful, and the parties in interest approached one I. Austin Kelly to interest him in the park and in the formation of the petitioner corporation. Kelly had previously been engaged in the amusement business. He considered the property worth $175,000 to $200,000 and agreed to contribute $50,000 in cash for one-half the capital stock of the corporation to be formed. The agreement entered into is as follows:

For and in consideration of the sum of One Dollar paid, receipt of which is hereby acknowledged an Agreement has this Second Day of December 1916 been entered into by and between LOUIS BERNI, of New York City, EDWARD LAUTERBACH, of Ashland, Ky. and FRANK HARDY, of Rye, N. Y. hereinafter known as Parties of the First Part and I. Austin Kelly, of Ashland, Ky., hereinafter known as Party of the Second Part whereby it is agreed that Parties of the First Part hereby turn over to Party of the Second Part Fifty Thousand Dollars ($50,-000.00) of the stock of the Rye Beach Pleasure Park Company and for which Party of the Second Part agrees to pay Parties of the First Part $50,000.00.

It is understood and agreed that said stock taken over by Party of the Second Part from Parties of the First Part is free and clear from all indebtedness and that Parties of the First Part bind themselves to pay all debts and liabilities of the Park still remaining from past operations of said park. It is understood that Party of the Second Part shall be held harmless and free from all liability, in this direction, by parties of the First Part.

It is understood and agreed that the Rye Beach Pleasure Park Co., shall take over and assume this agreement when said Company has been incorporated.

Said Parties to this agreement hereby set their hands and seals.

Parties of the First Part:    Louis Berni
                              E. J. Lauterbach
                              Frank Hardy

Party of the Second Part:
                              I. Austin Kelly

Kelly desired to manage the enterprise and the following agreement was accordingly made:

For and in consideration of the sum of One Dollar paid, receipt of which is hereby acknowledged an agreement has been entered into this Second day of December 1916 by and between LOUIS BERNI of New York City, EDWARD LAUTERBACH, of Ashland, Ky. and FRANK HARDY of Rye, N. Y. hereinafter known as parties of the first part and I. AUSTIN KELLY, of Ashland, Ky., hereinafter known as Party of the Second Part whereby it is agreed

THAT Parties of the First Part shall pay Party of the Second Part a yearly salary of Five Thousand Dollars ($5000) for his services as General Manager of the Rye Beach Pleasure Park said yearly salary to be paid Party of the Second Part for a term of Four Years as from the date of this agreement.

It is understood and agreed that, at the end of said term of Four years, Parties of the First Part, if for any reason they may not be satisfied with Party of the Second Part's management of said Park they shall have the right to purchase the Fifty Thousand Dollars of stock held or controlled by said Party of the Second Part the sum of One Hundred Thousand Dollars ($100,000.00). It is also understood and agreed that Party of the Second Part shall, under said conditions, have the right to purchase the stock held by Parties of the First Part upon the same basis of purchase price. It is further understood that, at the end of the said term of four years, if neither party of this agreement have purchased the stock of the other party that Party of the Second Part shall continue as General Manager of said Park for a further term of eight years (representing the balance of the lease of said park property held by the Rye Beach Pleasure Park Company) and for any further renewal of said lease at the agreed upon yearly salary of Five Thousand Dollars ($5000.00).

Said parties to this agreement hereby set their hands and seals.

Parties of the First Part:

Louis Berni<br>E. J. Lauterbach<br>Frank Hardy

Party of the Second Part:

I. Austin Kelly

The petitioner was incorporated December 6, 1916, with an authorized capital stock of $10,000 divided into 100 shares having a par value of $100 each.

The following are pertinent portions of the minutes of the meeting of the stockholders of petitioner held on December 19, 1926:

WHEREAS, the stockholders and board of directors of this corporation have received a proposition, reading as follows, to wit:

"Rye Beach Pleasure Park Co., Inc.,
Rye, New York.

Gentlemen:

The undersigned being the owners, in their respective names of all of the outstanding stock issued, whether common, preferred or otherwise of the Montross & Hardy Amusement Company, do hereby offer said stock to your Company, together with all of the properties, assets, rights and privileges of any kind or character of such corporation for the sum of Fifty thousand ($50,000.00)

Dollars, or its equivalent, Fifty (50) shares of the common stock of your corporation.

Very truly yours,

|          |                |
|----------|----------------|
| (Signed) | Louis Berni    |
| (Signed) | Frank Hardy    |
| (Signed) | Mary E. Hardy" |

\*       \*       \*       \*       \*       \*       \*

WHEREAS, the stockholders and board of directors of this corporation have received a proposition, reading as follows, to wit:

"Rye Beach Pleasure Park Co., Inc.,

Rye, New York.

Gentlemen:

Pursuant to a resolution passed at a meeting of the stockholders of the Montross & Hardy Amusement Company and a similar meeting of the board of directors of the Montross & Hardy Amusement Co., the Montross & Hardy Amusement Company does hereby offer to sell, assign, transfer and convey to your company all of the business, good will, right to do business stock in trade, assets, leases, licenses, privileges, benefits advantages and chattels and property, real, personal or mixed for the sum of Fifty thousand ($50,000.00) Dollars to be paid for in Fifty (50) Shares of the common stock of your corporation, the same to be delivered eleven shares to Mr. Frank Hardy, five shares to Mrs. Mary E. Hardy, seventeen shares to Mr. Louis Berni and seventeen shares to Mr. Edward J. Lauterbach.

This proposal to be accepted forthwith.

Very truly yours,

[SEAL.]                                    Montross & Hardy Amusement Co.,

By (Signed)    Louis Berni

President."

Attest.

(Signed)    Frank Hardy

Secretary

The proposal from the Montross & Hardy Amusement Company was thoroughly discussed and the following resolution presented and its adoption regularly moved, seconded and carried, and

WHEREAS, the Montross & Hardy Amusement Company has proposed, in writing, to sell, assign, transfer, convey and set over all its rights to do business, good will, stock in trade, office fixtures, assets, leases, licenses, privileges, benefits, advantages and property, whether real, personal or mixed; and Messrs. Frank Hardy, Louis Berni and Mrs. Mary E. Hardy have proposed, in writing, to sell, transfer, assign, and set over to this Company, the stock of the Montross & Hardy Amusement Company, consisting of sixty (60) Shares of common stock all of which are owned and controlled by them.

Now, THEREFORE, in consideration of the amount specified in said proposal, which amount is of the fair value of the stock, assets, etc., of the Montross & Hardy Amusement Company, be it

RESOLVED, that this company purchase of Mary E. Hardy, Frank Hardy and Louis Berni, the sixty (60) shares of the common stock of the Montross & Hardy Amusement Company and purchase of the Montross & Hardy Amusement Company all the good will, right to do business, stock in trade, assets, leases, licenses, privileges, benefits, advantages and property, of any kind or character whatsoever and wheresoever located for the sum of Fifty thousand ($50,000.) Dollars, to be paid for by issuing and delivering fifty (50) shares of the common stock of this company, as follows:

Mary E. Hardy five (5) shares, Frank Hardy, eleven (11) shares, Louis Berni seventeen (17) shares and Edward J. Lauterbach seventeen (17) shares, and be it further

RESOLVED that these stocks are not to be delivered and transfer consummated until Messrs. Louis Berni, Edward J. Lauterbach and Frank Hardy execute to the corporation their joint and several bonds in and by virtue of the terms of which they each promise and agree to hold the Rye Beach Pleasure Park Co., Inc., its successor or successors harmless from any debts, liabilities, obligations, liens or incumbrances, of any kind or character that may be outstanding against the Montross & Hardy Amusement Company or any one claiming under or through it and by which they further promise and agree to bind their heirs, executors and assigns, and be it further

RESOLVED, that the president be and he hereby is authorized and directed to execute such certificates of stock and the secretary is hereby authorized and directed to attest the same and attach the official seal of the corporation thereto and enter the same upon the corporate books of this company.

The Secretary then presented and read a proposal from Mr. I. Austin Kelly in and by virtue of the terms of which he agrees to subscribe to fifty (50) shares of stock of the Company and pay therefor the sum of Fifty thousand ($50,000.) Dollars, on account of which he has paid the sum of Fifteen thousand ($15,000.) Dollars with the understanding and in consideration that he is to be the general manager and treasurer of the Company at a salary of Five thousand ($5,000.) Dollars a year, payable in equal monthly payments beginning with the 1st day of February, 1917, and terminate of the 1st day of February, 1911 [sic].

There then follows a discussion and a resolution approving the contract agreement above set forth.

The minutes of the meeting of the board of directors held on December 19, 1916, disclose action by the directors similar to that taken by the stockholders, as set forth above, and in addition thereto the following:

Mr. Hardy reported that Mr. Charles E. McManus was willing to enter into a lease with the corporation embodying the premises of the lease and extensions and renewals thereof, entered into between the Montross & Hardy Amusement Company and Charles E. McManus.

The following resolution was introduced, seconded, and declared carried:

RESOLVED, that the President be and he hereby is authorized and empowered to enter into a lease in the name of the Company, embodying the premises above, with Dr. Charles E. McManus, and to execute the same in the name of the corporation, and that the Secretary be and he hereby is authorized and empowered to attach the corporate seal thereto.

Kelly paid $50,000 to the petitioner and received fifty shares of stock therefor.

On some date prior to January 27, 1917, the following agreement was entered into between the petitioner and Charles E. McManus:

INDENTURE, made this first day of December, 1917, [sic] between Charles E. McManus, of the Village and Town of Rye, County of Westchester and State of New York, herinafter called the lessor, and Rye Beach Pleasure Park Co., Inc., a corporation organized and existing under and by virtue of the laws of the State of New York, having its place of business in the Village and Town of

Rye, County of Westchester and State of New York, hereinafter called the lessee.

WITNESSETH: That the lessor has letten and by these presents doth grant, demise and to farm let unto the lessee the lands and premises situated at or near Rye Beach, in the Village and Town of Rye, County of Westchester and State of New York, bounded and described as follows:

Easterly in front by Rye Beach Avenue, southerly by the northerly line of a piece or plot of land laid out and designated "Map of Lounsbury Park, at Rye Beach, etc.," which map is on file in the office of the register of the county of Westchester; westerly by Forest Avenue and Northerly by land belonging respectively to Emily Ward, and the New York and Stamford Railway Company and Beck Avenue, for the term of twelve years, beginning with and including the first day of December, 1916, and terminating on the 30th day of November, 1928, upon the terms and conditions following:

First: It is agreed and understood that the rent for the said premises shall be as follows:

(A) From and including December 1st, 1916, up to and including November 30th, 1920, $16,000.00, payable each year in six equal installments of $2,666.67 on December 1st, March 1st, April 15th, July 1st, August 1st and October 1st of each year, beginning with the first day of December 1916, up to and including the first day of October, 1920.

(B) From December 1st, 1920, up to and including November 30th 1921, the sum of $17,000, payable in six equal installments of $2833. and 33 cents each on the following dates to wit: December 1st, 1920, March 1st, 1921, April 15th, 1921, July 1st, 1921, August 1st, 1921 and October 1st, 1921.

(C) From the first day of December 1921, up to and including the 30th day of November, 1926, at the rate of $18,000. per year, which sum shall be payable each year in six equal installments of $3,000. each on December 1st, March 1st, April 15th, July 1st, August 1st and October 1st, during each of said years, beginning with and including the first day of December 1921, and ending on the first day of October, 1926.

(D) From the first day of December, 1926, to the 30th day of November, 1928, at the yearly rent of $20,000. per year as follows: Payable each year in six equal installments of $3,333.33 each on December 1st, March 1st, April 15th, July 1st, August 1st and October 1st of each year beginning with and including the first day of December 1926 and ending on the first day of October, 1928.

Second: The lessee promises and agrees during the term of this lease to pay the rent for the premises above described as herein specified and set forth, and in addition thereto to pay each year any increase in taxes that the lessor might be required to pay, because of any additional buildings or improvements heretofore or hereafter, during the occupancy of said premises by Ambrose C. Montross, Frank Hardy, Montross & Hardy Amusement Company, or the lessee hereunder erected upon the premises above described by the lessee, not including the hotel; bath houses and bathing pavilion.

Third: It is agreed and understood that all the buildings and structures now erected and standing upon the premises above described are included in this lease and the lessee is to keep the same in repair and may alter, change, sublet, lease, rent, or license all or any part of the premises above described for any lawful purpose and all buildings and structures now erected and standing thereupon may be removed by the lessee at any time before the expiration of this term, except the hotel, bath houses and bathing Pavilion, and any addition or extension thereto which has been or hereafter may be erected by the lessee, which actually become a part of either said hotel, bath houses or pavilion.

Fourth: It is agreed and understood that the lessor reserves a right of way over and across the premises above described upon and over the premises laid out and used as a roadway from Rye Beach Ave. to the trolley station, with the right of passage to pedestrians only upon and over the same, which roadway the lessee is to keep in good order and condition and keep open at all times for the purpose of allowing and permitting the passage above mentioned.

Fifth: It is agreed and understood that the lessee will during the term of this lease, insure and keep insured in the name of the lessor the buildings and additions actually connected therewith, standing and erected upon the premises above described, known as the hotel, for at least a sum of twelve thousand dollars $12,000. in a good and substantial insurance company or companies, insuring the lessor by the standard form of policy against loss or damage by fire, with lightning clause, and including right to use electricity, which policies or policy shall be delivered to and retained by the lessor. In the event that said building shall be injured by fire, or the elements to such an extent that it cannot be used, the lessor promises and agrees to restore the same as speedily as possible at a cost not to exceed the sum of twelve thousand dollars $12,000. and until such time as the same is repaired and restored, the rent reserved herein shall be reduced at the rate of $175.00 per month until such time as said repairs shall be substantially completed and said building ready for use as a hotel and in the same event of the total destruction of the said building, the moneys received from such insurance shall be used for the reconstruction of the same.

Sixth: The lessor hereby agrees to insure and keep insured the bathing pavilion and bath houses on said premises for the further sum of six thousand dolars $6,000, in the name and for the benefit of the lessor and deliver said policy or policies to the lessor; and if the bath houses and pavilion erected upon the said demised premises shall be destroyed by fire or lightning, the same shall be repaired as speedily as possible by the lessor out of the insurance money received by him for such loss or damage, at a cost not to exceed the sum of six thousand $6,000. provided, however, that if such loss or damage shall occur in any year after the 15th day of September, it shall be a sufficient compliance with the terms of this agreement, if such pavilion and bath houses are fully repaired and restored on or before May 1st in the following year. And if such bath houses and pavilion shall be so destroyed by fire at any time between June 1st and September 15th, in any year during the said demised term, the rent provided to be paid in and by this lease shall be reduced at the rate of $300.00 three hundred dollars per month, from the date when said fire may occur until September 15th next following, such reduction of rent to be deducted from the payment of rent next following the date when such fire may occur.

Nothing herein contained, however, shall be deemed to require the said lessor to pay for the repairing of damage done by fire, lightning or the elements to either of said buildings of any amount greater than the amount received under the insurance policy or policies covering the said building as payment for such loss.

Seventh: And it is hereby mutually agreed that the said lessee may at any time, at the end of any season, viz., after September 30th, and before March 1st next following of any year during the term of this lease, by notice in writing to the lessor, cancel the lease of the premises hereby demised, if all the licensed attractions erected or used on the said demised premises shall be stopped by law for any reason not due to the fault, omission, act or neglect of itself, its officers, agents, licenses or servants, in which event the lessor may

by notice in writing to the lessee, at any time within sixty days after receipt of such notice of cancellation from said lessee at his option, cancel the lease or leases of any other premises leased by the lessor to the lessee.

Eighth: It is mutually understood and agreed that if any of the rents herein reserved shall be unpaid after the respective dates when the same are hereby made due and payable, or if default shall be made in any of the covenants herein contained, then it shall be lawful for the lessor to re-enter the said premises and to remove all persons therefrom and take possession of the demised premises, and notwithstanding such re-entry or order, judgment or warrant which may be made or issued in any summary or like proceeding, the lessee shall remain liable for the rent hereby reserved, and the lessor may at his option re-let or sub-let said premises, or any part or portion thereof, as agent for the lessee, and receive rent therefor, and in such case the lessee shall be liable for any deficiency between the rent so received and the rent hereby reserved.

Ninth: The lessee covenants and agrees that it will permit the lessor or his agents duly authorized in writing, to show the demised premises to persons desiring to hire or purchase the same on and after the 1st day of September, next preceding the expiration of the term and will permit suitable notices of "To-Let" or "For Sale" to be placed upon the said premises, and remain thereon without hindrance or molestation.

Tenth: The lessee covenants and agrees that it will during the term hereby demised keep, the demised premises, together with the building and improvement thereon, and also the said roadways or passageways in good condition and repair at its own expense, and will save harmless and keep the lessor protected from all loss or damage by reason of its neglect so to do.

Tenth: The lessee covenants and agrees that it will at all times comply with all laws and with all rules, regulations and orders of the Board of Health of the Village of Rye, and all other duly constituted authorities in relation to the demised premises, and will keep and save the lessor harmless and indemnified from any claim or liability caused by any violation of any such law, rule, regulation or order, or arising under the law known as the Civil Damage Law, or other similar enactment, now in force or hereafter to be enacted.

Eleventh: It is mutually agreed that in order to permit of the erection of attractions in the Grove upon the westerly part of the demised premises. The lessee may from time to time cut down such trees as shall be specifically identified and permitted by the lessor in writing, but without such written permission however, no trees shall be cut down, nor shall any of the same be destroyed, mutilated or otherwise injured, but they shall be properly protected and cared for by the lessee.

Twelfth: The lessee hereby further covenants and agrees that if any default be made in the payment of rent reserved herein, or any part thereof, at the times above specified or if default be made in the performance of any of the covenants and agreements herein contained, the said hiring and relation of landlord and tenant at the option of the lessor shall wholly cease and terminate, and in the event that the lessee shall be dispossessed of the said premises, it hereby waives the privilege of redemption given by section 2256 of the code of Civil Procedure, or by any similar future law.

Thirteenth: The lessor hereby covenants and agrees with the lessee, on payment of the rent reserved herein, and upon the performance of the covenants aforesaid, it shall and may peaceably and quietly have, hold and enjoy the demised premises and every part thereof, for the term hereinbefore granted.

Fourteenth: It is mutually covenanted and agreed that all of the provisions of this agreement are and shall be binding on the parties hereto, their heirs, administrators, successors and assigns respectively.

IN WITNESS WHEREOF, the lessee hath hereunto affixed its corporate seal, and hath caused these presents to be signed by its president, and the lessor has hereunto set his hand and seal the day and year first above written.

IN THE PRESENCE OF:

RYE BEACH PLEASURE PARK CO. INC.

By: LOUIS BERNI, President

CHARLES E. MCMANUS

ATTEST:

Frank Hardy,
    Secretary.

In 1925 the heirs of Charles E. McManus conveyed the leased premises to the County of Westchester. The deed of conveyance contains the following provisions, among others:

It is understood that the conveyance of the above property shall be subject to two existing leases, both in the name of Rye Beach Pleasure Park Company, Inc., and both expiring November 30, 1928; it being further understood and agreed that the Vendors shall retain any rental accruing under the aforesaid leases prior to date of closing title, October 21, 1925, and the rents due December 1, 1925, shall also belong to the Vendors; and the Vendors specifically reserve the right to and shall be entitled to make collection and receive payment of said rents. It is understood and agreed that the conveyance of the above property shall be subject to all restrictions now in force and effect, contained in prior deeds.

\*        \*        \*        \*        \*        \*        \*

Together with such buildings and improvements thereon as are specifically enumerated in the annexed Schedule A, \* \* \*

The following appears on Schedule A attached to the deed:

(1) The structure or structures referred to in the lease to Rye Beach Pleasure Park Co., Inc., dated December 1, 1917, as the "hotel".

(2) The structure or structures referred to in the lease above mentioned as the "bath houses".

(3) The structure or structures referred to in the lease above mentioned as the "bathing pavilion".

(4) The structure or structures referred to in the lease to Rye Beach Pleasure Park Co., Inc., dated December 1, 1916, as the "three certain bungalows" with appurtenances, and the right, title and interest of the Vendors in the furniture therein contained.

In April, 1926, the following agreement was made between petitioner and Kelly and the County of Westchester:

THIS AGREEMENT made this 19th day of April, 1926, by and between RYE BEACH PLEASURE PARK COMPANY, INC., a domestic corporation having its principal place of business in the Village and Town of Rye, Westchester County, New York, and I. AUSTIN KELLY, of the same place, parties of the first part and THE COUNTY OF WESTCHESTER, a municipal corporation of the State of New York, party of the second part, WITNESSETH:

WHEREAS, the party of the second part has heretofore acquired title from Evelyn Hall Pierce, formerly Evelyn Hall McManus, and Evelyn L. Finnegan, formerly Evelyn L. McManus, of certain lands and premises situate in the Town of Rye, Westchester County, New York, known and distinguished as parcels 12, 13 and 13A, Sheet 2 on a map entitled "Map showing lands to be acquired by the Westchester County Park Commission for Manursing Island

Park in the Town and Village of Rye, Westchester County N. Y." said map prepared by Carpenter & Duffy, C. E. & S. September 28th, 1925, and filed in the office of the Register of the County of Westchester on December 9th 1925, as Map #2795, subject to two certain leases, one dated the 1st day of December, 1916, made by Charles E. McManus to the Rye Beach Pleasure Park Company, Inc., and expiring on the 30th day of November, 1928, and the other dated the 1st day of December, 1917, made by Charles E. McManus to the Rye Beach Pleasure Park Company, Inc., and expiring on the 30th day of November, 1928, which said leases are attached hereto and made a part hereof; and

WHEREAS, the party of the second part is desirous of purchasing the said leases and all the equipment, buildings and property owned or used by the parties of the first part in the operation of its pleasure park.

Now therefore, in consideration of the sum of One ($1.00) Dollar and other consideration in dollars, lawful money of the United States to the parties of the first part in hand paid at or before the ensealing and delivery of these presents by the party of the second part as hereinafter set forth, the receipt whereof is hereby acknowledged, the parties of the first part have bargained and sold and by these presents do grant, convey, assign and transfer unto the party of the second part its successors and assigns the two aforesaid leases, together with all and singular premises therein mentioned and described and all the rest, residue and remainder yet to come of and in the terms mentioned in said leases, together with the equipment, buildings, appurtenances and all other property owned or used by the parties of the first part in the operation of its pleasure park at Rye Beach, including all the leases, property, goods and chattels described in the schedules hereto annexed and made a part hereof.

And the parties of the first part do hereby covenant, grant, promise and agree to and with the party of the second part that the aforesaid premises, leases, property, goods and chattels are free and clear of and from all former and other gifts, grants, bargains, sales, leases, judgments, executions, back rents, taxes, assessments and encumbrances whatsoever, except outstanding leases, sub-leases and concessions expiring not later than November 30th, 1928, all of which are included in this sale and transfer and a schedule of which is hereto annexed and made a part whereof.

It is understood that the parties of the first part shall not be liable for any taxes or assignments becoming a lien after March 15th, 1926.

It is expressly understood and agreed that the stipulated and agreed consideration to be paid by the party of the second part to the parties of the first part herein is the sum of One Hundred Thirty-Five Thousand ($135,000.00) Dollars, together with the sum of Three Thousand ($3,000.00) Dollars for rent due on December 1st, 1925, on the aforesaid lease dated December 1st, 1917, and paid by the parties of the first part to Evelyn Hall Pierce and Evelyn L. Finnegan the successors in interest of Charles E. McManus, the lessor therein, which said sum under the terms of the purchase of the aforesaid property from Evelyn Hall Pierce and Evelyn L. Finnegan the said grantors were entitled to retain.

It is understood and agreed that the Secretary of the Westchester County Park Commission will and does hereby at the time of the execution and delivery of this agreement refund to the parties of the first part the sum of Three Thousand ($3,000.00) Dollars, which said sum was paid by the parties of the first part to the Westchester County Park Commission as the installment of rent due under said lease March 1st, 1926.

It is also understood and agreed that apportionment of fire and liability insurance will be made as of March 15th, 1926, as set forth in the schedule hereto annexed and made a part hereof.

The parties of the first part agree to and do hereby pay to the Westchester County Park Commission the sum of Fifteen Thousand and Four Hundred Thirty-two and 79/100 ($15,432.79) Dollars, which said sum is all of the rents collected by the parties of the first part on all outstanding leases, sub-leases or concessions of, in or on the said premises of the parties of the first part up to March 31st, for the season of 1926, as shown by the schedule which is hereto annexed and made a part hereof.

To HAVE AND To HOLD the same unto the party of the second part, its successors and assigns forever, and the parties of the first part do for themselves, their legal representatives and assigns covenant and agree to and with the party of the second part to warrant and forever defend the sale and transfer of the said leases and all the property, goods and chattels hereby sold unto the party of the second part its successors and assigns against all and every person and persons whomsoever.

IN WITNESS WHEREOF, the Rye Beach Pleasure Park Company, Inc., has caused this agreement to be signed by its President and its seal hereunto affixed and the said I. Austin Kelly has hereto set his hand and seal the day and year first above written.

RYE BEACH PLEASURE PARK COMPANY, INC.
By E. R. LOUDEN
*Vice-President*
By I. AUSTIN KELLY
*Treasurer and General Manager*
I. AUSTIN KELLY          (L. S.)

In 1917 Kelly purchased the stock of the other stockholders for $50,000.

In December, 1918, the authorized capital stock of the petitioner was increased to $125,000, and stock certificates issued for the increase.

In 1917 the petitioner at a cost of $92,290.66 acquired certain amusement devices, including among other things a whip, roller coaster, fun house, merry-go-round, Panama Canal and skating rink. The average probable useful life of all of these devices at the time of their acquisition was ten years. A reasonable allowance for exhaustion, wear and tear is 10 per cent.

OPINION.

STERNHAGEN: The deficiencies in question were determined under section 302 of the Revenue Act of 1918, " since," as stated in the Commissioner's notice, " this amount is less than the amount computed under section 328." The petitioner assigns as error (1) that the tax thus computed is excessive and the invested capital has not been determined, (2) that depreciation has been incorrectly determined as to both the property to be depreciated and the rate applicable, and (3) that special assessment under section 328 has not been made. The facts alleged in the petition were all denied in the answer.

From the trial and the briefs it is difficult to ascertain what relief the petitioner seeks and upon precisely what it relies to prove that its liability has not been correctly fixed. The determination of tax under section 302 does not involve a determination of invested capi-

tal, and is presumably less than if determined with reference to such capital under section 301. It does not appear what the Commissioner used as the factors of invested capital or by the comparison of what figures he determined that the tax under section 302 would be less than under section 301. Furthermore, as the Commissioner applied section 302 because he found the tax thus to be less than under section 328, and the petitioner asks for assessment under section 328, there is further confusion in perceiving the significance of the issue as to invested capital. It may be that the petitioner believes that a correct computation of its invested capital under section 326 and the resulting ratio between it and correct net income would bring about a lower tax under section 301 than that found under section 302 or that hoped for under section 328. But this could only be established by evidence upon which such comparison could be made. It is not to be assumed. Nor could the Board make a finding as to a single factor of the statutory invested capital, such as the value of tangible property received for stock, without knowing whether this has been allowed or disallowed by the respondent or otherwise how such factor is related to the result sought to be reached.

Speaking more specifically, it appears that Kelly paid $50,000 in cash for one-half the stock at a par value of $5,000 and that for the other half of the stock the petitioner received both the assets of the Montross & Hardy Co., including whatever rights it had to the tangibles on the leased land, and the stock of that company. It does not appear what the Commissioner regarded as the value of property paid in for stock or shares or how much, if anything, was claimed or allowed as surplus, either earned or paid in. Supposing it true that title to the amusement structures on the land was legally sufficient to constitute them its assets and that when received by petitioner they were of substantial value, there is from this record no way of telling that the application of section 302 was wrong.

This will indicate the difficulty of ascertaining what are the petitioner's rights and the necessity for sustaining the respondent in his use of section 302 instead of section 301 or section 328.

The evidence sufficiently establishes the reasonableness of an allowance of 10 per cent as an average rate of depreciation of amusement devices. This rate should be applied to not less than the amount of $92,290.66 stipulated as the cost of those acquired in 1917, and such additional amount, if any, as the Commissioner has determined as the value of the depreciable amusement devices acquired prior thereto. This additional amount we are unable to determine from the evidence.

*Judgment will be entered on 15 days' notice, under Rule 50.*